UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ) | Case No. 23-08058 |
| HUB DUB, LTD., ) | |
| ) | Honorable A. Benjamin Goldgar |
| Debtor ) | |
| ) | Chapter 11 |

**RESPONSE OF DEBTOR, HUB DUB, INC., TO OBJECTION OF CABOT PROPERTIES PROPERTY MANAGEMENT, L.P. TO CONFIRMATION OF SUBCHAPTER V AMENDED PLAN OF REORGANIZATION**

NOW COMES the Debtor, Hub Dub, Inc. ("Debtor"), by and through its attorney, Joel A. Schechter of the Law Offices of Joel A. Schechter, and in response to the objection of Cabot Properties Property Management, L.P. ("Cabot"), to confirmation of the Debtor's Subchapter V Amended Plan of Reorganization ("Plan"), states as follows:

**INTRODUCTION**

This is the response of the Debtor to the objection of Cabot to confirmation of the Plan ("Objection"). The Debtor believes that the proposed order confirming the Plan ("Order") and the Plan satisfies the Objection and, therefore, the Debtor believes the Objection should be overruled and the Plan confirmed.

**BACKGROUND**

On June 20, 2023, the Debtor filed a voluntary petition pursuant to subchapter V of Chapter 11 of Title 11, United States Code ("Case"). The Case was filed in order to stay the litigation with Cabot pending in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, IL, filed by the Debtor's landlord styled *Cabot Industrial Value Fund VI Operating Partnership, L.P. v. Hub Dub,*

*Ltd.,* Case No. 23EV00000320, and *Cabot Industrial Value Fund VI Operating Partnership, L.P. v. Hub Dub, Ltd.,* Case No. 23EV00000323.

On July 31, 2023, Cabot filed its motion for relief from the automatic stay and for other relief ("Motion") alleging a prepetition rent claim in excess of $632,000, exclusive of fees and costs. After briefing the Motion, but before the Court ruled on the Motion, Cabot and the Debtor came to an agreement to resolve the Motion and an amended agreed order was entered (Dkt. #65). A series of further agreed orders were entered (Dkt. #67 and #75) based upon the Debtor's inability to vacate the 3959 Space as timely as the agreed orders provided.

On January 26, 2024, the Debtor filed its Plan which provides for Cabot to setoff the security deposit on hand at the filing of the Case in the amount of $31,000 against its general unsecured claim and, further, provides for the payment to Cabot of an administrative rent claim in the amount of $333,973.46 (reduced by payments from the Debtor in the amount of $75,000) for an unpaid balance of $258,973.46 to be repaid in twenty-four (24) monthly installments of $10,791 each, commencing thirty (30) days after the effective date of the Plan. The Plan further provides for a dividend to general unsecured claims (including Cabot) of approximately twenty-one (21%) percent of allowed claims.

On January 29, 2024, an order was entered setting the Plan for confirmation on March 18, 2024, and the order further provided for a date for acceptances or rejections of the Plan and a date for filing objections to confirmation.

Classes 1 and 4 voted to accept the Plan. No ballots were cast rejecting the Plan. Cabot did not vote. But for the Objection of Cabot, the Plan is otherwise confirmable.

## CABOT'S OBJECTION

On March 8, 2024, Cabot filed its Objection. The Objection raises two arguments: (1) Cabot's administrative rent claim is understated because the Debtor did not vacate the 3959 Space until February 6, 2024, and Cabot is entitled to more money for use and occupancy of the 3959 Space and (2) the Plan is devoid of appropriate remedies within the meaning of 11 U.S.C. §1191(c)(3)(B)(ii) in the event of a default by the Debtor in Plan payments. In support of its Objection, Cabot cites certain case law which the Debtor will discuss hereafter.

## DEBTOR'S PROPOSED ORDER CONFIRMING THE PLAN

On April 5, 2024, the Debtor uploaded to the docket its proposed Order. In paragraph 1 of the Order, the Debtor has cured the Objection as to the amount due Cabot for its administrative rent claim. Paragraph 1 provides for an amendment to Section 3.01 of Article 3 of the Plan by increasing Cabot's administrative rent claim to $379,840.06 (reduced by payments from the Debtor in the amount of $75,000) for an unpaid balance of $304,840.06, to be repaid in twenty-four (24) monthly installments of $12,701.67 each, commencing thirty (30) days after the effective date of the Plan.

In paragraph 4 of the Order, the Debtor submits it has cured Cabot's remaining objection as to providing an appropriate remedy in the event the Debtor defaults in Plan payments. Paragraph 4 of the Order provides:

> With respect to Classes 3 & 4 and the administrative rent claim of Cabot, in the event the Debtor fails to make a payment provided for in the Plan, the creditors in those Classes and Cabot may enforce all of their respective rights and remedies under non-bankruptcy law, provided that such creditor first provides notice of such default to the Debtor and its counsel and an opportunity to cure the same within fourteen (14) days of the date of such notice. Notice shall be provided either by first class mail directed to Debtor's counsel at 53 West Jackson Blvd., Suite 1522, Chicago, IL 60604, or via email to the Debtor at eddie@hubdubltd.com and its counsel at joel@jasbklaw.com, and the Subchapter V Trustee, Robert P. Handler at rhandler@com-rec.com. Upon the Debtor's failure to timely cure the noticed default, the creditor may immediately

3

and without further order of this Court enforce its rights and pursue all remedies to which it is entitled under applicable law, provided that such relief shall be limited to the amount due such creditor pursuant to the terms of the Plan, less any payments made to the creditor pursuant to the Plan.

Moreover, Article 8.08 provides for the Court to retain jurisdiction after confirmation of the Plan to consider certain matters including, but not limited to, resolve disputes regarding implementation of the Plan and enforce terms of the Plan. Finally, Article 9 of the Plan provides that since the Plan is being confirmed as a nonconsensual Plan pursuant to Section 1191(b), the Debtor's discharge will not be entered until the Court grants a discharge on completion of all payments due within the first 3 years of the Plan. These are safeguards provided in the Plan and proposed Order which the Debtor submits are appropriate remedies upon default in Plan payments. "...there is no indication that Congress intended section 1191(c)(3)(B) to require anything beyond the preservation of a creditor's rights to seek the enforcement of the plan terms in the bankruptcy court and, if necessary, its rights under applicable state law." *In re Urgent Care Physicians, Ltd.*, 2021 Bankr. LEXIS 3466*32 (Bankr. E.D. Wisconsin 2021).

## CASES CITED BY CABOT ARE DISTINGUISHABLE

Cabot cites *In re Pearl Resources LLC*, 622 B.R. 236 (Bankr. S.D. Texas 2020)[1] noting that the debtor therein proposed to sell property to satisfy unpaid allowed claims, if necessary. Next, Cabot cites *In re Hyde*, 2022 Bankr. LEXIS 1571 (Bankr. E.D. Louisiana 2022), wherein the individual debtor provided that in the event of a default in plan payments, she would obtain a second mortgage on her home to pay the unpaid allowed administrative expense claims and allowed general unsecured creditors. Finally, Cabot cites *In re Ellingsworth Residential Community Association, Inc.*, 2020 Bankr. LEXIS 2897 (Bankr. M.D. Florida 2020), wherein the plan provided for a special

---

[1] The initial citation by Cabot to *Pearl* goes to feasibility which is addressed in 11 U.S.C. §1191(c)(3)(B)(i).

4

assessment on the members of the homeowners' association in the amount of $300,000 to fund the plan.[2]

What distinguishes these cases from the Debtor is that the Debtor has no unencumbered property to sell, or otherwise encumber, for the benefit of Cabot's administrative claim or the allowed claims of general unsecured creditors. FC Marketplace, LLC ("FC") has a blanket security interest in all assets of the Debtor. FC is treated in Class 1 under the Plan and is to be paid $58,956.15, plus interest at the rate of 15.82%, over a period of thirty-six (36) months. United States Small Business Administration ("SBA") has a blanket security interest in all assets of the Debtor, but its secured claim is subordinated to the claim of FC. The SBA has a secured claim (treated in Class 2 of the Plan) in the amount of $133,245.51[3] and an unsecured claim in the amount of $391,076.68. Unlike *Pearl*, there are no assets to liquidate in the event of a default in Plan payments. Unlike *Hyde*, there are no assets to encumber with a mortgage in order to raise funds to pay allowed claims in the event of a default in Plan payments. Unlike *Ellingsworth*, there are no members of the Debtor to hit with a special assessment to make up any shortfall in Plan payments to allowed general unsecured claims or Cabot's claim.

## PROPOSED ORDER AND PLAN PROVIDE APPROPRIATE REMEDIES

During the last hearing, the Court correctly noted that §1191(c)(3)(B)(ii) provides that appropriate remedies *may* include liquidation of nonexempt assets. Having established that there are no nonexempt or unencumbered assets to liquidate in the event of a default in Plan payments, the Debtor submits that its Plan and Order provide appropriate remedies to creditors in the event of a

---

[2] Debtor submits that the special assessment in this case goes more toward the feasibility test of §1191(c)(3)(B)(i) and not to providing adequate remedies of §1191(c)(3)(B)(ii).
[3] To be paid, with interest at 3.75%, over a period of sixty (60) months.

5

default in Plan payments. As mentioned at the last hearing and in the cases cited herein, there is very little case law determining what are appropriate remedies. "The requirement under §1191(c)(3)(B)(ii) that the remedies provided be 'appropriate' suggests that they should be tailored to the situation." *Hamilton v. Curiel (In re Curiel)*, 651 B.R. 548, 563 n.11 (BAP 9th Cir. 2023).

In denying confirmation of a plan, the Honorable LaShonda Hunt in *In re Channel Clarity Holdings LLC*, 2022 Bankr. LEXIS 2408 (Bankr. N.D. Illinois 2022), observed that the debtor's plan did not provide appropriate remedies to satisfy §1191(c)(3)(B)(ii). The plan therein provided "…the particular claimant shall be entitled to pursue its remedies as are available to it pursuant to applicable law". *Id.* at *45. Judge Hunt noted "[T]o assert that creditors can pursue remedies under applicable law if Debtor should default is a toothless remedy." *Id.* The largest creditor in *Channel Clarity* held half the debt and objected to the proposed language in the plan. "Under these circumstances where the objecting unsecured creditor bears a disproportionate amount of risk, Debtor could offer options such as expedited liquidation of nonexempt assets, or a truncated process for declaring a default and allowing collections to begin, or immediate conversion to allow a chapter 7 trustee to take over business operations and possibly conduct a winddown and liquidation." *Id.* at *46. So, let's examine the suggestions of Judge Hunt in the context of the Debtor herein. There are no nonexempt assets to liquidate. Immediate conversion to chapter 7 does not help Cabot or any other unsecured creditor as all assets are pledged as security to FC and the bifurcated claim of SBA. A chapter 7 trustee would likely file a report of no assets since liquidating assets for the benefit of secured creditors is not favored by the U.S. Trustee or the courts. The language proposed by the Debtor in the Order is what Judge Hunt has referred to as "allowing collections to begin". What is "toothless" about the language provided by the Debtor? After all, had the case not been filed Cabot would not

have received the $75,000 paid to it by the Debtor post-petition and would have been left to pursue its state court remedies. Cabot would have obtained a judgment and would have been unable to collect any money since the Debtor's assets were already pledged as security to FC and SBA.

### CONCLUSION

For the reasons stated herein, the Debtor requests the Court overrule Cabot's Objection and enter the proposed Order (Dkt. #96) confirming the Plan. Alternatively, since the order entered by the Court on October 18, 2023 (appended to the Objection) provides that if Cabot and the Debtor can't agree, the Court can order otherwise, then the Court could suggest additional or replacement language.

                    Respectfully submitted,

                    Hub Dub, Inc., Debtor

                    By:   /s/ Joel A. Schechter
                          Its Attorney

Joel A. Schechter
Attorney No. 03122099
LAW OFFICES OF JOEL A. SCHECHTER
53 W. Jackson Blvd., Suite 1522
Chicago, Illinois 60604
(312) 332-0267
joel@jasbklaw.com